No. 22-16316

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**BOGDAN RADU**

Petitioner-Appellee,

v.

**PERSEPHONE JOHNSON SHON**

Respondent-Appellant.

On Appeal from the United States District Court
for the District of Arizona
Case No. 4:20-cv-00246-RM

**APPELLANT'S MOTION TO STAY
THIRD RETURN ORDER PENDING APPEAL**

Stephen J. Cullen
Kelly A. Powers
Miles & Stockbridge P.C.
1201 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20004
(202) 465-8374
scullen@milesstockbridge.com
kpowers@milesstockbridge.com

*Attorneys for Appellant*

Persephone Johnson Shon, Respondent-Appellant (the "Mother"), by her undersigned attorneys, pursuant to Federal Rule of Appellate Procedure 8, and Circuit Rule 27, 27-1, and 27-2 hereby files her Motion to Stay Third Return Order Pending Appeal, against Bogdan Radu, Petitioner-Appellant (the "Father"). The lower court has temporarily stayed the Third Return Order to permit application to this Court for a stay pending appeal.

The Father's counsel has advised the Mother's counsel that the Father opposes a stay of the lower court's Third Return Order.

**I.    INTRODUCTION**

1. The true interests of this Court must be the protection of the children. Mother requests a stay of the lower court's Third Return Order of the parties' two minor children, O.S.R., born in 2013, and M.S.R., born in 2016 (collectively the "children") to Germany, entered on August 22, 2022 (ER-15-19) (hereinafter "the Third Return Order"). The Mother filed her third Notice of Appeal on August 29, 2022. (ER-254).[1]

2. Each of the lower court's previous return orders have been stayed pending the outcome of the Mother's appeals. The Third Return Order should

---

[1] In accordance with Federal Rule of Appellate Procedure 8(a)(2)(B)(iii), the Mother has provided the relevant parts of the record below in her Excerpts of Record which has been filed immediately prior to the filing of this Motion, along with the Mother's Opening Brief. The detailed procedural and factual background of this case is set forth in the Mother's Opening Brief.

1

likewise be stayed. The compelling analysis now bolstered by *Golan* continues in spades. The Father's ongoing abuse and threats have escalated since the first two appeals and is now directed at the Mother's counsel. Direct attacks on the representatives of parties in litigation we know from history are the harbingers of further bad acts by the party making the threats. The passage of time makes no difference, except that the Father and his threats have become even worse. The third stay is therefore necessary to allow time for this third expedited appeal, and to allow the lower court to conduct the mandatory evidentiary hearing on remand to assess *current* grave risk and ameliorative measures as mandated by this Circuit.

3. The Father's grave acts of abuse and grave threats continue to be sidelined by the lower court. The lower court continues to fail to assess the Father's current actions and his current grave risk to the children under the correct legal standard.[2]

4. The lower court continues to rely upon evidence from the stale original evidentiary hearings in July and August 2020 (more than two years before the Third Return Order) in support of its Third Return Order. (ER-16-19). It relied on evidence from the limited and stale evidentiary hearing on the first remand in early November 2021 (nearly 10 months before the Third Return Order), much of which had been

---

[2] The Supreme Court of the United States issued its Opinion in *Golan v. Saada* setting forth the correct legal standard for analyzing grave risk and ameliorative measures on June 15, 2022. *Golan v. Saada*, 142 S. Ct. 1880 (2022).

2

obtained on an improper ex parte and off-the-record basis from the Executive Branch and a foreign government.

5. Staying the Third Return Order during the pendency of the expedited third appeal balances the Convention's equal and competing objectives of protection of the children's welfare and "secur[ing] the prompt return of children wrongfully removed to or retained in any Contracting State." Convention, art. 1; *Chafin v. Chafin*, 568 U.S. 165, 178 (2013). The stay conforms to the Supreme Court's directive in *Golan* that the Convention "does not pursue return exclusively or at all costs." 142 S. Ct. at 1893. The return mechanism and the defenses to return are rightly stated to sit in equipoise in light of *Golan*. The Father's continuing mischaracterization and mockery of the Mother's legitimate safety plan to retain the children in America to protect them, demonstrates nothing other than the intolerable situation a return would create by rewarding the Father's current abuse and threats.

6. This appeal is uber-expedited. The Mother has filed her Opening Brief and Excerpts of Record immediately before filing this Motion. The Father's Brief is due on November 4, 2022, and the Mother's Reply is due seven days after the Father's Brief has been filed. Oral argument had been tentatively scheduled for December 2022. The Mother has requested that oral argument be advanced to November 2022. The Court has now scheduled oral argument for November 21, 2022.

## II. ARGUMENT FOR STAY PENDING APPEAL

7. The well-being of children is at stake in every case under the Hague Convention. *Chafin v. Chafin*, 133 S.Ct. 1017, 1027 (2013). Protection of children's welfare is the equal and competing objective to the Convention's goal of "secur[ing] the prompt return of children wrongfully removed to or retained in any Contracting State." Convention, art. 1.

8. The Supreme Court of the United States has reconciled the Convention's two competing objectives by explaining that ". . . Courts can achieve the ends of the Convention and ICARA – and protect the well-being of the affected children – through the familiar judicial tools of expediting proceedings and granting stays where appropriate." *Chafin*, 133 S. Ct. at 1027; *see also* Convention, art. 1; International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq*. (2016) ("ICARA"). It is appropriate to follow the *Chafin* directive and for the Court to grant the stay here.

9. The official[3] Explanatory Report to the Convention instructs that the overall purposes of the Convention "give[] way before the primary interest of any

---

[3] *Choctaw Nation v. United States*, 63 S.Ct. 423, 677 (1943) ("In interpreting a treaty it is proper to refer to the records of its drafting and negotiation"); *see also Simcox v. Simcox*, 511 F.3d 594, 604, n.3 (6th Cir. 2007) (explaining that the Perez-Vera Report is "recognized by the Hague Conference on Private International Law as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it").

4

person in not being exposed to physical or psychological danger or being placed in an intolerable situation." Elisa Perez-Vera, Explanatory Report ¶ 29, in 3 *Hague Convention on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction* 1069 (1982) ("Perez-Vera Report").

10. The Perez-Vera Report emphasizes that the actions of the States Parties must reflect the philosophy of the Convention whereby "the struggle against . . . international abduction must always be inspired by the desire to protect children and should be based upon an interpretation of their true interests." *Id.* at ¶ 24.

11. The Supreme Court explains that if a district court considers ameliorative measures, it "must be guided by the legal principles and other requirements of the Convention and ICARA." *Golan*, 142 S. Ct. at 1893. Appellate courts' previous instructions to district courts to "order return if at all possible, improperly elevated return over the Convention's other objectives." *Id*. (quotations and citations omitted).

12. The Convention "does not pursue return exclusively or at all costs. Rather the Convention is designed to protect the interests of children and their parents, and children's interests may point against return in some circumstances." *Id*.

13. The Supreme Court reiterates in *Golan* that the lower courts "must remain conscious of [the Convention's purpose of protecting the interests of

5

children], as well as the Convention's other objectives and requirements, which constrain the lower courts' discretion to consider ameliorative measures in at least three ways." *Id*. These solemn admonitions are to be applied here and the stay should be granted.

### III. STAY FACTORS

14. The Supreme Court instructs in Hague cases that "[c]ourts should apply the traditional stay factors in considering whether to stay a return order: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Chafin*, 133 S. Ct. at 1027 (internal citations and quotations omitted); Hon. James D. Garbolino, THE 1980 CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION: A GUIDE FOR JUDGES 111 (Federal Judicial Center 2012).

15. Courts throughout the United States regularly apply stays in appropriate Hague Convention cases when the four factors are considered.[4] Indeed, the lower

---

[4] *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000 (9th Cir. 2009) (district court granted stay); *Panteleris v. Panteleris*, 601 Fed. Appx. 345 (6th Cir. 2015) (appellate court granted stay because the respondent made a "plausible" showing of two potential exceptions to return); *Sanchez v. RGL*, 761 F.3d 495 (5th Cir. 2014) (appellate court granted stay after children were granted asylum); *Charalambous v. Charalambous*, 627 F.3d 462 (1st Cir. 2010) (appellate court granted stay and expedited appeal); *Haimdas v. Haimdas*, 720 F.Supp.2d 183 (2010), *aff'd by* 401

court here has done so with respect to the First Return Order and Second Return Order. And it has temporarily stayed the Third Return Order.

16. The Supreme Court emphasizes in *Chafin* that although "routine stays" of Hague Convention orders are not appropriate, "[i]n every case under the Hague Convention, the well-being of a child is at stake; application of the traditional stay factors ensures that each case will receive the individualized treatment necessary for appropriate consideration of the child's best interests." *Id*. This case is not a routine case and requires the individualized treatment Chief Justice Roberts highlights in *Chafin*.

---

Fed. Appx. 567 (2nd Cir. 2010) (district court granted temporary stay; appellate court granted stay and expedited appeal); *Koch v. Koch*, 450 F.3d 703 (7th Cir. 2006) (stay granted by appellate court); *Kijowska v. Haines*, 463 F.3d 583 (7th Cir. 2006) (appellate court granted stay and expedited appeal); *In Re Application of Adan*, 437 F.3d 381 (3d Cir. 2006) (appellate court granted stay during pendency of first appeal); *Danaipour v. McLarey*, 286 F.3d 1 (1st Cir. 2002) (appellate court granted stay and expedited appeal); *Miller v. Miller*, 240 F.3d 392 (4th Cir. 2001) (noting that a temporary stay in the district court to allow a request for a further stay in the appellate court would have been granted, but the respondent did not request a temporary stay); *March v. Levine*, 249 F.3d 462 (6th Cir. 2001) (appellate court granted stay); *Walsh v. Walsh*, 221 F.3d 204 (1st Cir. 2000) (district court granted stay; appellate court affirmed the stay and held that it was not an abuse of discretion to enter a stay when a grave risk finding is plausible); *Whallon v. Lynn*, 230 F.3d 450 (1st Cir. 2000) (appellate court granted stay and expedited appeal); *Croll v. Croll*, 229 F.3d 133 (2nd Cir. 2000) (district court granted stay; appellate court expedited appeal); *Freidrich v. Freidrich*, 78 F.3d 1060 (6th Cir. 1996) (district court granted stay on second appeal); *Prevot v. Prevot*, 59 F.3d 556 (6th Cir. 1995) (appellate court granted stay).

17. **Factor 1**: The Mother has filed her expedited Opening Brief immediately prior to filing her Motion, which sets out her arguments in full. The Mother has a strong likelihood of succeeding on the merits of her appeal.

18. Firstly, this Circuit mandates an evidentiary hearing on remand in Hague Convention grave risk cases and the lower court did not hold an evidentiary hearing. *Gaudin v. Remis*, 415 F.3d 1028, 1036 (9th Cir. 2005) (abrogated on other grounds by *Golan*, 142 S. Ct. 1880). The purpose of the remand evidentiary hearing is to assess grave risk and ameliorative measures *at the time of the remand* under the correct legal standard. *Id*. In assessing grave risk and ameliorative measures on remand, district courts must consider the effect of ameliorative measures as they exist in the present, not as they were at the time of the original evidentiary hearing before any appeals. *Id*. The lower court has failed to follow this Circuit's instruction.

19. The questions before a district court on remand are therefore ". . . whether a grave risk of harm *now* exists, and whether that risk can be minimized through an alternative remedy." *Id*. (emphasis in original). An evidentiary hearing is therefore required. The Supreme Court by implication instructed this Court, and therefore the lower court, to do so when it remanded the case. The lower court cannot assess the *current* grave risk *now* without holding an evidentiary hearing. The lower court failed to hold the required evidentiary hearing on remand and in accordance with this Circuit's jurisprudence.

20. Instead, the lower court relied upon stale evidence, some of which had been obtained ex parte from the Executive Branch and a foreign government. And it excluded testimony of the Mother's child psychology expert, both at the first remand hearing in November 2021, and on the second remand, by failing to hold an evidentiary hearing at all. The Mother has a strong likelihood of success in her appeal on this basis alone.

21. Secondly, this Court instructed the district court to communicate with the United States Central Authority under the treaty. *Radu* at 1088-89. But this Court's instruction to the lower court did not unleash it to engage in inadmissible ex parte and off-the-record communications with the Executive Branch and with a foreign government.

22. The lower court exceeded the scope of its limited constitutional judicial power when it conducted ex parte off-the-record inquisitorial evidence gathering with the Executive Branch and with a foreign government. It accepted ex parte off-the-record communications, upon which it relied without giving the parties any opportunity to challenge the material as required in our adversarial system. There is no record whatsoever of the lower court's ex parte communications with our own Government and a foreign government.[5] The lower court denied the Mother the

---

[5] By contrast, in interstate child custody matters brought under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), if courts of two states communicate with each other, the court "may allow the parties to participate." *See*,

opportunity to test the qualifications of the person or persons in either government with whom the lower court conferred. Worse, the lower court relied on inadmissible hearsay evidence conveyed to it by the Executive Branch. The lower court denied the Mother the opportunity to test the accuracy of the information provided by the two governments through cross-examination. By doing so, the lower court has denied this Court the opportunity to review fully the lower court's Second Return Order[6] and Third Return Order, both of which were based upon the ex parte inquisitorial investigation. The lower court's ex parte inquisitorial evidence gathering is therefore reversible error. It overstepped the scope of the lower court's constitutional judicial powers.

---

*e.g.*, *Ariz. Rev. Stat*. § 25-1010(B). "If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made." *Id*. A record must be made of the judicial communication and the parties must be informed promptly of the communication and given access to the record. *Id*. at (D). The UCCJEA has been adopted by 49 of the 50 states of the Union. *See* Uniform Law Commission, UCCJEA status table, available at uniform law.org (last visited October 3, 2022) (confirming all states except Massachusetts have enacted the UCCJEA).

[6] The Mother cannot prepare and submit to this Court a Federal Rule of Appellate Procedure 10(c) statement because the lower court excluded the Mother from participating in the ex parte off-the-record evidence gathering with the Executive Branch and the German government. *See* Fed. R. App. P. 10(c) ("If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection.").

23. Thirdly, the lower court erred when it engaged in speculation and hypothesizing in its Second and Third Return Orders. The lower court hypothesized improperly in several material areas of its decision.

24. The lower court hypothesized that ". . . if a German court were to construe the temporary custody provision of this Court's [First Return Order] as a custody order, the provision may be enforceable . . . ." (ER-44). There is no such evidence to support the lower court's hypothesis.

25. The lower court speculated that a German court would "be able to make a custody determination *within* six months of the return of [the children] to Germany." (ER-43-45) (emphasis added). The lower court based this speculation on "the testimony at the post-remand hearing, as well as the information obtained by the Court from the German Central Authority." *Id*. There is no such evidence. There is no record of the evidence gathered by the lower court and the State Department from the German government in the lower court's ex parte inquisitorial process.

26. The lower court hypothesized that: (A) the Mother would be able to stay in Germany until a German court makes a custody determination (ER-43-45); (B) the Mother's parents would travel to Germany as tourists to assist with the children *Id.*; (C) the children can transition back to German society and the care of the Father *Id*.; and (D) that German child protection agencies would "ensure the

11

wellbeing of the children." *Id*. None of the lower court's factual hypotheses are supported in the record.

27. The record before the lower court at the remand evidentiary hearing does not establish any likelihood of performance through any supportive reinforcements in Germany. The lower court cannot remedy the deficient record by speculating and hypothesizing that its order will protect the children from grave risk of harm if returned to Germany.

28. Fourthly, the lower court erred when it "notes" that it found the Father's testimony had been "more credible than [the Mother's testimony] . . . throughout these proceedings." (ER-18). The Court provides no explanation for its credibility assessment in the Third Return Order, and no recognition of the impact of the Mother's trauma on her presentation, despite the lower court having found that the Father has psychologically and emotionally abused her.

29. Fifthly, the Father continues to threaten criminal proceedings against the Mother. But in its Second Return Order and Third Return Order, the lower court improperly sidesteps the Father's threats of pending criminal proceedings against the Mother. The lower court ignored the Father's own written submissions and testimony, both of which confirm that there are criminal matters pending against the Mother in Germany in which he is the complaining witness. Hague Convention returns to a country in which there are criminal matters pending against the

children's primary caregiver are disfavored. *See, e.g., Sabogal v. Velarde*, 106 F. Supp. 3d 689, 711 (D. Md. 2015) (requiring petitioner to confirm no criminal cases pending against respondent before return or children).

30. Sixthly, there are no orders or any other protective measures in place in Germany. As explained by the uncontroverted testimony of Mother's German law expert at the hearing on the first remand in this case, the German courts cannot take any such steps before the children arrive in Germany. Unlike the most recent remand decision in *Saada v. Golan*, if the Father acts on his threats by taking the children through "re-abduction" efforts or criminal efforts, the children will be left with the Father without any protection of the United States courts, the German court system, or the Mother.

31. This case differs from the remand in *Golan* following the Supreme Court opinion. In *Golan*, on remand the district court entered its return order with ameliorative measures without holding a further evidentiary hearing, based largely on its findings that its previously-ordered ameliorative measures had already been put in place in Italy. *Id.*[7] Not so here. Ameliorative measures cannot be put in place in Germany in advance of the children's return. Ninth Circuit jurisprudence requires an evidentiary hearing.

---

[7] The respondent in *Saada* has noted her appeal of the district court's decision. *Saada*, No. 1:18-cv-5295, at Doc. No. 163 (filed September 8, 2022).

32. The Mother's appeal will therefore likely succeed and a further evidentiary hearing to assess grave risk and ameliorative measures *now* at the time of the potential return to Germany will be required.

33. **Factor 2**: Firstly, the lower court itself agrees that the second factor weighs in favor of a stay.

34. The Mother and children will suffer irreparable injury absent a second stay. At the evidentiary hearing, there was uncontroverted and compelling testimony put before the lower court with respect to the Father's ongoing abuse and coercive behavior towards the Mother and her family. The lower court's finding that the Mother has met her burden to establish grave risk to the children—but then ordering alternative remedies that are not subject to any enforcement measures—is inconsistent with other Hague Convention cases that have conducted an undertakings analysis in the United States and inconsistent with the Supreme Court's ameliorative measures analysis in *Golan*.

35. **Factor 3**: The Supreme Court has provided clear instruction that appeals in Hague Convention cases must be expedited, particularly in cases where an appropriate stay has been entered. *Chafin*, 133 S. Ct. at 1029 (Ginsburg, J., concurring). The Court cites as an approved example the *Charlambous* case, where the entire appeal was concluded within 57 days of the filing of a notice of appeal. *Id*. (citing *Charlambous v. Charlambous*, 627 F.3d 462 (1st Cir. 2010)). There will be

no substantial injury to the Father by the issuance of a further short stay of the Third Return Order until this third expedited appeal and the evidentiary hearing on remand have concluded. This Court has already expedited this appeal. And the Mother has requested that the oral argument be advanced.

36. **Factor 4**: Firstly, the lower court itself agrees that the fourth factor weighting is neutral because the public interest favors both prompt return and the safeguarding of the well-being of children.

37. The public interest will be served by the issuance of a third stay pending the third expedited appeal proceedings. The Supreme Court recognizes and articulates the public interest in avoiding – where appropriate – the "shuttling children back and forth between parents and between international borders." *Chafin*, 568 U.S. at 178. The Supreme Court further explains ". . . courts can achieve the ends of the Convention and ICARA – and protect the well-being of the affected children – through the familiar judicial tools of expediting proceedings and granting stays where appropriate." *Id*. at 1026-27. The public interest weighs in favor of maintaining the children's guaranteed safety and stability in Arizona while this Court provides the necessary expedited direction. The public has an interest in being assured that the well-being of all children will be guaranteed to the extent possible while appeals are pending, and that all children will not subjected to return, without the courts ever having held the mandatory evidentiary hearing under the correct legal

15

standard, and relying on years-old stale evidence in support of a return order. The public interest is therefore aligned with the issuance of a stay and proceeding with the second expedited appeal in this case. It is the only methodology to ensure the welfare of the children, while balancing the competing objective of speedy resolution of Hague Convention cases.

## IV. CONCLUSION

38. This Court should stay the Return Order of the district court pending this second expedited appeal and the Supreme Court proceedings. This measured and proportionate approach balances the issues in this case, which continues to be a case of first impression.

**WHEREFORE**, for the foregoing reasons, the Mother respectfully requests that the Court:

A. STAY the Return Order requiring the return of the children to Germany pending final resolution of the Mother's appeal to this Court and remand proceedings in the lower court; and

B. TEMPORARILY STAY the Return Order for additional briefing in this Court; or

C In the alternative, if this Court is not inclined to stay the lower court's Third Return Order, the Mother requests that this Court TEMPORARILY STAY the Third Return Order until the Supreme Court rules on the Motion to Stay that the

16

Mother will promptly file if this Court does not stay the Third Return Order for the entire duration of the Mother's appeal and remand in the lower court; and

D.  Any applicable requirement for the posting of a bond related to this Court's Order being stayed be WAIVED in accordance with article 22 of the Hague Convention, which provides that "[n]o security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention." *See Lisandro Patrick v. Noelia Rivera-Lopez*, 708 F.3d 15, 22 (1st Cir. 2013); and

E.  For such other relief for the Mother and children as the interests of justice and the cause of justice may require.

/s/ Kelly A. Powers
Stephen J. Cullen
Kelly A. Powers
Miles & Stockbridge P.C.
1201 Pennsylvania Ave. N.W.
Suite 900
Washington D.C. 20004
(202) 465-8374
scullen@milesstockbridge.com
kpowers@milesstockbridge.com

*Attorneys for Appellant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October, 2022 a copy of the foregoing Motion has been filed electronically, and that it is available for viewing and downloading from the ECF system to all counsel of record.

/s/ Kelly A. Powers
Kelly A. Powers
